UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                           )
UNITED STATES OF AMERICA      )
                                                          )
            v.                        )     CRIMINAL NO. 05-10104-MLW
                                                          )
JOSHUA T. ANDUJAR,           )
                                                          )
          Defendant        )
                                                          )
_____)

**GOVERNMENT'S SENTENCING MEMORANDUM**

      The United States of America submits this memorandum in anticipation of the sentencing hearing in this case, which is scheduled to be held on August 24, 2006. In this memorandum, the government presents a summary of the key facts and the government's guidelines calculations and sentencing recommendation. The total loss amount for which the defendant is accountable is a central disputed issue with regard to application of the guidelines and the government anticipates that an evidentiary hearing will be necessary to resolve this issue.

**I.**     **Facts**

      On March 9, 2006, the defendant pleaded guilty to thirteen Counts charging violation of 18 U.S.C. § 287 (Counts 1, 2, 9 through 17, 20, and 21) and two counts charging violation of 18 U.S.C. § 1028(a)(7) (Counts 22 and 23). The offense conduct is summarized in the PSR at ¶¶7-28. Rather than review the evidence in detail here, the government will summarize the key facts it intends to establish at a sentencing hearing.

    **A.**     **General Scheme**

      The following facts are set forth in the PSR at ¶¶8-10 are appear to be undisputed. From approximately December 2001 through 2003, the defendant, Joshua T. Andujar, operated a tax

return preparation business in the Fitchburg/Worcester area. The defendant's criminal conduct involved his preparing and filing of tax returns in the names of taxpayers and, unbeknownst to the taxpayers, listing on those returns false dependents, which he then used to generate credits (both the earned income credit ("EIC") and child tax credits) that resulted in inflated refunds. Andujar had the refunds deposited into bank accounts that he controlled and kept a portion of or, in some instances, the entire refund. Andujar never showed the returns to his clients and those clients were unaware of the false dependents he listed and the amounts of the refunds that he received.

The fraudulent tax returns filed by Andujar had several identifying features in common: (a) common, recurring addresses (either Andujar's home address or "fronts" where Andujar went to pick up refund checks) ; (b) recurring bank accounts into which refunds were deposited; (c) handwriting; and (d) in several instances the submission of the return to the IRS's Andover Service Center in envelopes that contained Andujar's business address.

With respect to certain of his clients who hired Andujar to prepare their tax returns, Andujar, in some instances, prepared and filed returns – unbeknownst to the clients– for earlier tax years.

  **B.**  **Counts of Conviction**

The following facts are set forth in the PSR at ¶¶15-17 are appear to be undisputed. Andujar prepared and filed the false returns relating to the six individuals specified in Counts 1, 2, 9 through 17, 20, and 21 of the Indictment. Four of the taxpayers – Ramon Batista (Count 1), William Cotto (Count 2), Danixa Rivera-Merced (Counts 15-17), and Joel Serrano (Counts 20 and 21) retained Andujar to prepare returns for them and believed Andujar to be a bona fide tax

professional. All deny knowing any of the dependents listed on their respective returns. All have stated that the signatures on the returns are forgeries, and that Andujar never provided them with copies of the returns (or ever showed the returns to them). All deny living at the addresses listed on their returns or owning the bank accounts into which the refunds had been deposited. Each received only a portion or none of the refund issued by the IRS for the returns filed.

With regard to Efrain Pantojas-Ramos (Counts 9-11), in whose name Andujar filed returns for 2000, 2001, and 2002, Pantojas-Ramos is a Puerto Rican resident who has never resided in Massachusetts, never known Andujar, and had no knowledge that his identity had been stolen, much less that it was being used to file federal tax returns with the Andover Service Center.

With regard to Jose Reyes-Ramos (Counts 12-14), in whose name Andujar filed returns for 1999, 2000, and 2001, he died in Caguas, Puerto Rico on September 7, 1995. Andujar used the identity to file these three fraudulent tax returns in Reyes-Ramos' name, falsifying dependents and income to generate an EIC refund that Andujar had deposited into his bank account.

## II.    Guidelines Calculations

The defendant's base offense level ("BOL") is six pursuant to U.S.S.G. § 2B1.1. PSR ¶37. As stated in the plea agreement between the parties and as discussed more thoroughly below, the BOL is increased as follows:

    (A)    the BOL is increased by ten levels pursuant to U.S.S.G. § 2B1.1(b)(1)(F) because the total intended loss, which the government submits was $166,747, exceeded

        $120,000 and was less than $200,000[1];

   (B)    The BOL is further increased by two levels pursuant to U.S.S.G. § 2B1.1(b)(9)(C) because the offense involved sophisticated means; and

   (C)    The BOL is further increased by three levels pursuant to U.S.S.G. § 2J1.7 because the defendant committed the offense while on release.

Thus, the adjusted offense level is 21. Based on Andujar's prompt acceptance of personal responsibility, the government has agreed to recommend that the Court reduce by three levels Andujar's adjusted offense level under U.S.S.G. § 3E1.1. However, under the plea agreement, the government specifically reserved the right not to recommend a reduction under U.S.S.G. § 3E1.1 if Andujar falsely denies, or frivolously contests, relevant conduct for which he is accountable under U.S.S.G. § 1B1.3.[2]

    Below, the government addresses, in summary fashion, the loss amount it will seek to prove at sentencing, as well as the applicability of the sophisticated means enhancement and the

---

[1] In the plea agreement, the government took the position that the BOL is increased by twelve levels, rather than by ten as stated above, based on a loss amount between $200,000 and $400,000. However, the government is seeking to prove less loss at sentencing than was contemplated in the plea agreement. Thus, at sentencing, the government will ask the Court to find a total intended loss amount of $166,747 and will, accordingly, advocate a 10-level increase in the BOL based on loss.

[2] The government has not yet determined whether it will invoke its right not to recommend an acceptance-of-responsibility reduction, but is troubled by what appears to be Andujar's frivolous denial of relevant conduct in his objections to the PSR. By way of a single example, Andujar denies that the evidence establishes that a tax return filed in the name Maria De L. Garcia was false. Defendant's Objection to PSR ¶23. This return is written in the same distinctive handwriting used on several false returns Andujar has admitted he filed. Morever, as set forth in the PSR, Andujar sold a cooperating witness a Puerto Rican birth certificate and social security card in the name of Maris Lourdes Garcia in 1999. PSR ¶55. Finally, Andujar caused the Maria De L. Garcia return to be filed with the IRS <u>while Andujar was in federal custody awaiting sentencing</u> after conviction for selling fake birth certificates and social security cards. Andujar was thus not conducting his tax preparation business at the time he caused the Garcia tax return to be filed and it is thus inconceivable that the return is not false.

enhancement for an offense committed on release.

A.        **Loss Amount**

The false tax returns the government will seek to prove Andujar filed can be divided into three groups, each of which is summarized on a spreadsheet attached as an exhibit hereto. The groups are as follows;

>     Group 1:   This group consists of thirteen tax returns that Andujar, in pleading guilty, has admitted are fraudulent. The IRS has interviewed each of the persons named on these tax returns. The names of the taxpayers on the returns were either individuals who sought Andujar's services as a tax preparer or individuals whose identities Andujar stole for the purposes of filing fraudulent returns.
>
>     (See PSR ¶¶15-18; a spreadsheet captioned "Group 1" and detailing the loss for this group is attached hereto as Exhibit 1.)
>
>     Group 2:   This group consists of eight tax returns in the names of four individuals – Elizabeth DelValle, Luis Escalera-Verdejo, Maria de L. Garcia, and Jaclyn Roldan – specified in the indictment in counts to which Andujar did not plead guilty. The IRS has interviewed the four persons named on these returns as well, each of whom has admitted to being an illegal alien. Each has admitted that the name appearing on the tax return is not his or her true name; rather, he or she purchased a birth certificate, drivers licenses, or other form of identification in that name. Three of the four individuals purchased the identity documents directly from Andujar. The fourth – who purchased the identity of Maria De L. Garcia – purchased identity documents from an unknown person. The tax returns falsely filed in Garcia's name, however, specified as Garcia's address a post office box rented by Andujar or Andujar's residential address (117 Laurel Street in Fitchburg). Thus, Andujar is linked to each of these returns.
>
>     (See PSR ¶¶19-23; a spreadsheet captioned "Group 2" and detailing the loss for this group is attached hereto as Exhibit 2.)
>
>     Group 3:   This group consists of 43 tax returns not specified in the indictment but demonstrably false and linked to Andujar in ways that make clear that he filed them or caused them to be filed. They are linked to Andujar in several ways, e.g. they are written in what appears to be Andujar's handwriting; they identify as the taxpayer's address an address associated with Andujar (home address, post office box, or addresses he has used in

>connection with returns included in Groups 1 and 2), and/or they are deposited into a bank account under Andujar's control. The returns are demonstrably false because they were filed in the names of individuals who were residing in Puerto Rico during the tax years in question and who therefore had not obligation to file a federal income tax return. Moreover, according to IRS records, no tax return has ever been filed in the name of any of these individuals in, except for the returns included in this group.
>
>(See PSR ¶¶24-27; a spreadsheet captioned "Group 3" and detailing the loss for this group is attached hereto as Exhibit 3.)

The amount of the total actual loss (false claims paid by the IRS) is $125,916; the amount of the total intended loss (false claims submitted to the IRS) is $166,747. PSR ¶28. The latter number is the appropriate loss amount for guidelines purposes. See U.S.S.G. § 2B1.1, App. Note 2 (defining loss as the greater of, inter alia, actual loss and intended loss).

With regard to Group 2, each of the individuals in whose (false) names the returns in this group were filed, has (a) admitted to being an illegal alien and (b) admitted that the name appearing on the tax return is an identity he or she purchased from either Andujar or from an unknown person. Moreover, each of these individuals has stated that he or she did not authorize Andujar to file a tax return. Finally, each of these tax returns listed as the taxpayer's address a location Andujar used as part of this scheme. Specifically, the returns list the following addresses: 117 Laurel Street (Andujar's residential address); 24 West Beacon Street (the address listed on the Jose Reyes-Ramos 1999 return, which return Andujar has admitted was fraudulent); or P.O Box 1609 (rented by Andujar.) The evidence thus shows that Andujar filed or caused to be filed each of these eight returns without the knowledge of the individuals who purchased the identities of the persons in whose names the returns were filed.

With regard to Group 3, the attached spreadsheet is self-explanatory. One characteristic of this group bears explanation, however: nearly all of the returns in this group included a

Schedule C, which is a form on which a taxpayer sets forth income derived from a sole proprietorship. The reporting of income on a Schedule C will, in some instances, entitle the taxpayer to an earned income credit ("EIC"). An EIC will reduce the amount of tax owed in the amount of the EIC. All of the Group 3 returns that include a Schedule C have two things in common: (a) they claim two minor dependents and (b) the Schedules C report income in an amount between $10,000 to $12,000. This is significant for two reasons. First, the fact that the number of dependents and income range is perfectly consistent among the numerous returns suggests that Andujar fabricated the information. Put differently, it is extremely unlikely that nearly all of Andujar's clients would have (a) a schedule C business; (b) two dependents; and (c) income within this narrow range. Second, during the years at issue here – 1999 to 2001 – to maximize the EIC, a taxpayer would have to report that he had (a) at least two dependents and (b) Schedule C income in an amount between approximately $9,500 and $13,000. Reporting fewer than two dependents or reporting Schedule C income of less than $9,500 or greater than $13,000 would have the effect of reducing the EIC (and therefore reducing the refund paid by the IRS). These facts support the natural inference – relevant to application of the sophisticated means enhancement as well– that Andujar tailored the false returns he prepared to maximize the EIC.

      B.      <u>**Sophisticated Means**</u>

Under the fraud guideline, the BOL is increased by two levels if the offense involved "sophisticated means." U.S.S.G. § 2B1.1 (b)(8)(C) (November 1, 2002 Guidelines Manual). The commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." <u>Id.</u>, and see App.

Note 6(B) ("Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.").

Andujar's scheme, while not overwhelmingly sophisticated, warrants application of this enhancement because it required expertise in tax matters and included conduct analogous to the examples provided in guideline. As an attorney who has completed the necessary course work for a Masters degree in taxation and who has worked for several years as a tax preparer, Andujar applied specialized tax knowledge to the commission of this scheme. See PSR ¶¶111-113, 116, 118. The filing of returns in a manner that maximized the EIC is evidence of sophisticated means. Likewise, the use of false dependents and other false statements, such as inflated income, to maximize the benefit of both the EIC and the child tax credit constitutes sophisticated means. Finally, Andujar's use of more than one bank account to receive payments from the IRS and various addresses to receive refund checks and to avoid detection by the IRS is another indicator of sophisticated means. See United States v. Aragbaye, 234 F.3d 1101, 1107-08 (9th Cir.2000) (upholding a two-level increase for use of sophisticated means where the defendant applied for an electric filing identification number with the IRS using a false name and social security number; set up a tax preparation businesses through which he perpetrated his fraud; prepared W-2 forms for fictitious employees; opened numerous post-office boxes and opened a check cashing business to deposit the fraudulently obtained funds).

### C.  Offense Committed on Release

Pursuant to U.S.S.G. § 2J1.7 a three-level enhancement applies if the defendant committed the offense while on supervised release, "as if this section were a specific offense

characteristic contained in the offense guideline for the offense committed while on release." U.S.S.G. § 2J1.7. On July 19, 2001, the defendant was sentenced by this Court (Gertner, D.J.) to a term of imprisonment followed by three years of supervised release following the defendant's convictions for unlawfully selling evidence of citizenship and social security cards. PSR ¶ 55. The defendant was released from prison and began his term of supervised release on November 23, 2001. The defendant filed most of the fraudulent returns in this case between December 2001, within weeks of beginning his term of supervised release, and March 2003. The enhancement thus applies.[3]

## III.    Government's Sentencing Recommendation

The government recommends a period of incarceration within the applicable Guideline sentencing range as determined by the Court at sentencing; supervised release for a period of three years; a fine of $30,000; restitution in an amount to be determined at sentencing; and a special assessment of $1,500. Andujar began this scheme to defraud while in custody on a previous federal conviction and continued it in earnest within weeks of being released from custody and while under supervision ordered by this Court. His conduct thus demonstrates brazen disregard for the law and for this Court. That conduct caused harm to the integrity of the

---

[3] The PSR, at ¶ 144, notes that the plea agreement does not provided notice of the statutory penalties set forth in 18 U.S.C. § 3147. " Neither [18 U.S.C. § 3147] nor [U.S.S.G. § 2J1.7] itself contains any notice requirement." United States v. Hecht, 212 F.3d 847, 848 (3rd Cir.2000). The "notice requirement" is contained in the Commentary to § 2J1.7 and is satisfied so long as the defendant receives pre-sentence notice of the potential enhancement, for example in the PSR or during plea negotiations. Id.; and see United States v. Kentz, 251 F.3d 835,840-41 (9th Cir. 2001)("As other courts have held, this is a pre-sentence requirement"); United States v. Bozza, 132 F.3d 659,661 (11th Cir. 1998)(§ 2J1.7 does not require notice prior to guilty plea); United States v. Vazquez, 113 F.3d 383, 388-89 (2nd Cir. 1997) (discussing § 2J1.7 and noting that it suggests only pre-sentence notice required); United States v. Browning, 61 F.3d 752,756-57 (10th Cir. 1995)(PSR gave adequate notice for the court to apply § 2J1.7)).

tax system and defied the terms of release imposed by this Court. To reflect the seriousness of the crime, promote respect for law, provide just punishment and afford adequate general deterrence, a sentence of incarceration is called for. See 18 U.S.C. § 3553(a).

## Conclusion

For the foregoing reasons, the United States requests that the Court impose a sentence of imprisonment within the applicable Guideline sentencing, supervised release for a period of three years, a fine of $30,000, restitution, and a special assessment of $1,500.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ John A. Capin

JOHN A. CAPIN
Assistant U.S. Attorney

U.S. v. Joshua Andujar
Crim. No. 05-10104-MLW

# Exhibit 1

Group 1

### Summary of Loss and Attempted Loss
### Joshua Andujar
### USC Docket Number 05CR10104

| Taxpayer | Year | Address per Return | Amount of Refund Claimed | Adjusted Refund per (RAR 4549) | Total False Claims | Amount Sent | Total False Claims Paid |
|---|---|---|---|---|---|---|---|
| 1 Batista, Ramon | 2001 | 8B Fairmount Street, S. Lawrence, MA 01843 | $ 5,432.00 | $ 4,324.00 | $ 1,108.00 | $ 5,432.00 | $ 1,108.00 |
| 2 Cotto, William | 1999 | 117 Laurel St., Fitchburg, MA 01420 | $ 3,303.00 | $ 1,150.00 | $ 2,153.00 | $ 3,303.00 | $ 2,153.00 |
| 3 Pantojas-Ramos, Efrain | 2002 | 1249 Main Street, Fitchburg, MA 01420 | $ 2,536.00 | $ - | $ 2,536.00 | $ 2,536.00 | $ 2,536.00 |
| Pantojas-Ramos, Efrain | 2001 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,381.00 | $ - | $ 2,381.00 | $ 2,381.00 | $ 2,381.00 |
| Pantojas-Ramos, Efrain | 2000 | 1249 Main Street, Fitchburg, MA 01420 | $ 2,372.00 | $ - | $ 2,372.00 | $ 2,372.00 | $ 2,372.00 |
| 4 Reyes-Ramos, Jose M. | 2001 | P.O. Box 1609, Fitchburg, MA 01420 | $ 4,008.00 | $ - | $ 4,008.00 | disallowed | |
| Reyes-Ramos, Jose M. | 2000 | P.O. Box 1609, Fitchburg, MA 01420 | $ 2,246.00 | $ - | $ 2,246.00 | $ 2,246.00 | $ 2,246.00 |
| Reyes-Ramos, Jose M. | 1999 | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,244.00 | $ - | $ 2,244.00 | disallowed | |
| 5 Rivera-Merced, Danixa | 2001 | P.O. Box 1609, Fitchburg, MA 01420 | $ 5,316.00 | $ 4,843.00 | $ 473.00 | $ 5,316.00 | $ 473.00 |
| Rivera-Merced, Danixa | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,246.00 | $ - | $ 2,246.00 | dup return | |
| Rivera-Merced, Danixa | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,306.00 | $ 435.00 | $ 1,871.00 | $ 2,342.29 | $ 1,907.29 |
| 6 Serrano, Joel | 2001 | 1249 Main Street, Fitchburg, MA 01420 | $ 5,517.00 | $ 5,183.00 | $ 334.00 | $ 5,517.00 | $ 334.00 |
| Serrano, Joel | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,248.00 | $ 119.00 | $ 2,129.00 | $ 2,248.00 | $ 2,129.00 |
| **GROUP 1** | | | **$42,155.00** | **$ 16,054.00** | **$ 26,101.00** | **$ 33,693.29** | **$ 17,639.29** |

U.S. v. Joshua Andujar
Crim. No. 05-10104-MLW

# Exhibit 2

**Group 2**

Summary of Loss and Attempted Loss
Joshua Andujar
USC Docket Number 05CR10104

| Taxpayer | Year | Address per Return | Amount of Refund Claimed | Adjusted Refund per (RAR 4549) | Total False Claims | Amount Sent | Total False Claim Paid |
|---|---|---|---|---|---|---|---|
| 7 DelValle, Elizabeth | 2001 | 117 Laurel Street, Fitchburg, MA 01420 | $ 4,043.00 | | $ 4,043.00 | disallowed | |
| 8 Escalera-Verdejo, Luis | 2001 | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,422.00 | | $ 2,422.00 | $ 2,422.00 | $ 2,422.00 |
| Escalera-Verdejo, Luis | 2000 | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,266.00 | | $ 2,266.00 | $ 2,295.55 | $ 2,295.55 |
| 9 Garcia, Maria De L. | 2002 | P.O. Box 1609, Fitchburg, MA 01420 | $ 4,033.00 | | $ 4,033.00 | $ 4,033.00 | $ - |
| Garcia, Maria De L. | 2001 | P.O. Box 1609, Fitchburg, MA 01420 | $ 2,408.00 | | $ 2,408.00 | $ 2,408.00 | $ 2,408.00 |
| Garcia, Maria De L. | 2000 | 117 Laurel St., Fitchburg, MA 01420 | $ 2,277.00 | | $ 2,277.00 | $ 2,277.00 | $ 2,277.00 |
| 10 Roldan, Jaclyn | 2001 | 117 Laurel Street, Fitchburg, MA 01420 | $ 5,429.00 | | $ 5,429.00 | $ 5,708.20 | $ 5,708.20 |
| Roldan, Jaclyn | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,276.00 | | $ 2,276.00 | $ 2,276.00 | $ 2,276.00 |
| **GROUP 2** | | | **$25,154.00** | **$ -** | **$ 25,154.00** | **$ 21,419.75** | **$ 17,386.75** |

<u>U.S. v. Joshua Andujar</u>
Crim. No. 05-10104-MLW

# Exhibit 3

**Summary of Loss and Attempted Loss**
**Joshua Andujar**
**USC Docket Number 05CR10104**

| Taxpayer | Year | SSN | Address per Return | Amount of Refund Claimed | Total False Claims Paid | Address controlled by Andujar | Filed with a Schedule-C | Deposit Andujar wife's Account | Deposit Andujar account | Rtn filed in Andujar Business Envelope | Address in & SSN issued in Puerto Rico |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 Albert-Mendez, Joel | 2002 | | 1249 Main St., Apt. 2R, Fitchburg, MA 01420 | $ 2,539.00 | $ 2,539.00 | X | X | | | | X |
| Albert-Mendez, Joel | 2001 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,316.00 | $ 2,316.00 | X | X | | | | X |
| Albert-Mendez, Joel | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,232.00 | $ 2,232.00 | X | X | | | | X |
| 12 Colon, Otni O. | 2001 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,488.00 | disallowed | X | X | X | | | X |
| Colon, Otni O. | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,202.00 | $ 2,202.00 | X | X | | | | X |
| 13 Cruz-Santiago, Jose Luis | 2002 | | 1249 Main St., Apt.2R, Fitchburg, MA 01420 | $ 2,546.00 | $ 2,546.00 | X | X | | | | X |
| Cruz-Santiago, Jose Luis | 2001 | | Laurel Street, Fitchburg, MA 01420 | $ 2,357.00 | $ 2,357.00 | X | X | X | | | X |
| Cruz-Santiago, Jose Luis | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,385.00 | $ 2,385.00 | X | X | | | | X |
| 14 DeJesus, Wilson | 2001 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 4,632.00 | $ 4,632.00 | X | | X | | | X |
| DeJesus-Figueroa, Wilson | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 4,898.00 | $ 4,370.40 | X | | | | | X |
| 15 Ferrer-Mojica, Jorge | 2000 | | 113 E. Haverhill St., Lawrence, MA 01841 | $ 2,397.00 | $ 2,397.00 | | X | | | | X |
| 16 Lopez, Jessica | 2001 | | 50 Danbury Drive, Methuen, MA 01844 | $ 4,516.00 | $ 4,516.00 | | | | | | X |
| Lopez, Jessica | 1999 | | 50 Danbury Drive, Methuen, MA 01844 | $ 2,297.00 | disallowed | | X | | | X | X |
| 17 Martinez, Gladys | 2001 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,325.00 | $ 2,325.00 | X | X | X | | | X |
| 18 Moret-Rolon, Jesus A. | 1999 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,313.00 | $ 2,293.81 | X | X | | | | X |
| 19 Pizarro-Rosa, Rosario | 2001 | | 61 Mystic Street, Methuen, MA 01844 | $ 4,174.00 | $ 4,174.00 | | | | | | X |
| Pizarro-Rosa, Rosario | 2000 | | P.O. Box 1609, Fitchburg, MA 01420 | $ 3,352.00 | $ 1,740.24 | X | | | X | | X |
| Pizarro-Rosa, Rosario | 1999 | | O. Box 1609, Fitchburg, MA 01420 | $ 4,073.00 | $ 2,552.00 | X | | | | | X |
| 20 Ressy-Andrade, Esteban | 2001 | | S. Broadway St., S. Lawrence, MA 01843 | $ 2,481.00 | $ 2,481.00 | | X | | | | X |
| 21 Reyes-Montalvo, Geronimo | 2000 | | 1249 Main Street, Fitchburg, MA 01420 | $ 2,280.00 | $ 2,280.00 | X | X | | | | X |
| 22 Rivera, Rafael A. | 2001 | | 1249 Main Street, Fitchburg, MA 01420 | $ 2,372.00 | $ 2,372.00 | X | X | X | | | X |
| Rivera, Rafael A. | 2000 | | Main Street, Fitchburg, MA 01420 | $ 2,391.00 | $ 2,391.00 | X | X | | | X | X |
| 23 Rodriguez-Hernandez, Harry | 2002 | | 1249 Main St., Apt.2R, Fitchburg, MA 01420 | $ 2,562.00 | $ 2,562.00 | X | X | | | | X |
| Rodriguez-Hernandez, Harry | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,303.00 | $ 2,241.72 | X | X | | | | X |
| 24 Roman-Reyes, Juan | 1999 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,258.00 | $ 2,276.63 | X | X | X | | | X |
| Roman-Reyes, Juan C. | 2001 | | P.O. Box 1609, Fitchburg, MA 01420 | $ 4,008.00 | $ 2,337.00 | X | X | | | | X |
| Roman-Reyes, Juan C. | 1999 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,258.00 | dup return | X | X | | | | X |

**Summary of Loss and Attempted Loss**
**Joshua Andujar**
**USC Docket Number 05CR10104**

| | Taxpayer | Year | SSN | Address per Return | Amount of Refund Claimed | Total False Claims Paid | Address controlled by Andujar | Filed with a Schedule-C | Deposit Andujar wife's Account | Deposit Andujar account | Rtn filed in Andujar Business Envelope | Address in & SSN Issued in Puerto Rico |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | Santiago-Roche, Carmen | 2000 | | P.O. Box 1609, Fitchburg, MA 01420 | $ 2,269.00 | $ 2,288.86 | X | X | | | | X |
| 26 | Santos-Gonzalez, Elvin Omar | 2000 | | 113 E. Haverhill St., Lawrence, MA 01841 | $ 2,370.00 | $ 2,370.00 | | X | | | | X |
| 27 | Serrano, Jose | 2001 | | 186 Spruce Street, Lawrence, MA 01841 | $ 2,472.00 | disallowed | | X | X | | X | X |
| 28 | Cardona, Rafael A. | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,220.00 | disallowed | X | X | | | X | X |
| 29 | Llanos, Yonne | 2000 | | 135 Charles St. Apt.3, Fitchburg, MA 01420 | $ 3,888.00 | $ 3,888.00 | | X | | | | X |
| 30 | Medina-Rivera, Jesus | 2001 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,338.00 | disallowed | X | X | | | | X |
| | Medina-Rivera, Jesus | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,303.00 | $ 2,303.00 | X | X | | | | X |
| | Medina-Rivera, Jesus | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,318.00 | dup. return | X | X | | | | X |
| 31 | Nieves, Eric | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,247.00 | $ 2,247.00 | X | X | | | X | X |
| | Nieves, Eric O. | 2001 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,437.00 | disallowed | X | X | | | | X |
| | Nieves, Eric O. | 2000 | | 130 South Street, Lynn, MA 01905 | $ 2,275.00 | dup. return | X | X | | | | X |
| 32 | Nieves-DeJesus, Hector | 2001 | | 1249 Main Street, Fitchburg, MA 01420 | $ 2,338.00 | $ 2,338.00 | X | X | | | | X |
| 33 | Rivera, Aida | 2001 | | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,340.00 | $ 2,340.00 | X | X | | | | X |
| | Rivera, Aida | 2000 | | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,214.00 | $ 2,214.00 | X | X | | | | X |
| | Rivera, Aida | 2000 | | P.O. Box 12, Leominster, MA 01453 | $ 2,280.00 | dup. return | X | X | | | | X |
| 34 | Rivera, Flor | 2000 | | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,228.00 | $ 2,349.00 | X | X | | | X | X |

**Group 3**      $ 115,492.00    $ 86,856.66

The signatures on all the above filed returns appear to be signed by the same person and similar to th