UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA,

      v.

JOSHUA T. ANDUJAR,
          Defendant.

Case Number: 1:05-cr-10104-**MLW**

DEFENDANT'S OPPOSITION TO
GOVERNMENT'S SENTENCING MEMORANDUM

A.    Uncharged Misconduct

The government is inaccurate to suggest that Mr. Andujar's objection to the inclusion of uncharged misconduct "falsely denies, or frivolously contests, relevant conduct for which he is accountable under U.S.S.G. § 1B1.3.2". As a general matter, the objection raised is one construing the Supreme Court's reasoning in *US v. Booker*. To the extent that the government points to a specific example in which reliable evidence points to liability for charged misconduct, i.e., the so-called group II (PSR ¶¶ 19 - 23), the defense must withdraw such an objection. Counsel will confer with the government to determine which such objections, if any, should be withdrawn.

As to instances of conduct that have never been charged, the so-called group III, the defendant objects to the legality of including uncharged §1B1.3 information in light of the plurality holding *Booker*. *US v. Booker*, 543 US 220 (2005). The Stevens majority explains that the *Apprendi* line of cases are all influenced by the desire to avoid a "contrary holding, which would have reduced the jury's role to the relative importance of low-level gatekeeping." Whether this conviction enters by plea or after trial, the

1

constitutional implication of Guidelines punishment for uncharged misconduct remains unaltered.

B.    Sophisticated Means Enhancement Not Warranted

The facts do not support the government's argument for application of the USSG §2B1.1(b)(8) sophisticated means enhancement to Mr. Andujar.  See, government's August 10, 2006 Sentencing Memorandum,  pp. 7 - 8.

> *6. Sophisticated Means Enhancement under Subsection (b)(8).*— ….(B) Sophisticated Means Enhancement.—For purposes of subsection (b)(8)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

Application Note 6 to USSG §2B1.1(b)(8)(C)(November 1, 2002).

The government does not point to facts showing that Mr. Andujar's conduct was "*especially* complex" or "*especially* intricate".  The government nearly admits that Mr. Andujar's conduct was not especially sophisticated:  "Andujar's scheme, while *not overwhelmingly sophisticated*, warrants application of this enhancement because it required expertise in tax matters and included conduct analogous to the examples provided in guideline."  Government's memorandum, p. 8.  Aside from mentioning Mr. Andujar's education, the government fails to show how Mr. Andujar's conduct was "especially" anything but reckless.  The sophistication of the defendant should not be at issue, only the means of the commission of the offense. The enhancement is "an offense

2

characteristic, not a characteristic of the individual defendant." *US v. Lewis*, 93 F.3d 1075, 1084 (2 Cir. 1996).

The circumstances the government urges to support an increased loss amount are the very ones that show Mr. Andujar's lack of sophistication in avoiding detection and his near total abandonment of caution.  The PSR places 43 uncharged returns in a group it calls  "category III" (PSR ¶¶24 - 28) based certain common identifying characteristics.  These similarities or indicators are the very ones that made it easy for the IRS to identify returns that defendant prepared.  All the returns were handwritten by Andujar, claimed an earned income credit supported by schedule C income, contained taxpayer address from a few locations used by defendant on other returns, deposited the refund to an account on which Mr. Andujar was an authorized signatory.

The government can point to no sophisticated conduct used to commit the offense or to avoid detection.  To the contrary, the evidence shows that the defendant was reckless (and probably manic) in preparing and submitting returns that were so easily spotted and pulled from processing for investigation.  The $140,000.00 disparity between actual and alleged intended loss amounts is strong proof that Mr. Andujar's was not especially or even partly sophisticated.  While the government mentions Mr. Andujar's education, there is nothing in the record to show that Mr. Andujar's background in tax theory helped him in any way to avoid audit or detection.   The government argues that: "As an attorney who has completed the necessary course work for a Masters degree in taxation and who has worked for several years as a tax preparer, Andujar applied specialized tax knowledge to the commission of this scheme."  Government's memorandum, p. 8.  It is counsel's understanding, however, that the reporting of

3

significant self-employment income in the first year of filing a schedule C was a "red flag" for the IRS.  Thus, no person with sophisticated knowledge about IRS practices would have used such a clumsy method to bolster an earned income credit.  Likewise, Mr. Andujar is alleged to have used the same year of birth in many of the earmarked returns, another flag for IRS investigators.  In a last attempt to bolster its argument, the government writes: "Finally, Andujar's use of more than one bank account to receive payments from the IRS and various addresses to receive refund checks and to avoid detection by the IRS is another indicator of sophisticated means."  Government's memorandum, p. 8.  Based on counsel's understanding of the facts, the bank accounts Mr. Andujar used were in his wife's name with a card for his signature and thus easily identified as under his control.  The reference to different addresses is similarly unavailing.  It was Mr. Andujar's use of a half dozen addresses for nearly all the returns that made return reviewers suspicious.

Mr. Andujar's conduct contains none of the earmarks of sophistication similar in kind or degree to the examples mentioned in the application notes.  There is no "intricate offense conduct pertaining to the execution or concealment of an offense." Application Note 6 to USSG §2B1.1(b)(8)(C)(November 1, 2002).  There was no movement among jurisdictions or other conduct like hiding assets or transactions, use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicating sophisticated means. The level of sophistication here is one possessed by any high school graduate who can read a tax form and instructions, perform ordinary math and prepare and "cook up" an inflated return.

The First Circuit has not provided guidance on application of the sophisticated

means "enhancement" of USSG §2B1.1. See, e.g., *US v. Brennick*, 134 F.3D 10, fn. 5 (1 Cir. 1998)(sentence and judgment affirmed but remanded to correct written judgment; sophisticated means enhancement mentioned in PSR but not issue on appeal); *US v. Brennick*, 134 F.3D 10 (1 Cir. 1998) (enhancement mentioned but not challenged by appellee-defendant on appeal); unreported decision *US v. Lascola*, 45 Fed.Appx. 5 (1 Cir. 2002) (rejecting defendant-appellant's double counting argument for overlap with "more than minimal planning" where defendant converted CPA client accounts to margin accounts and stole leveraged funds) citing 11th Circuit for a description of standard of review *US v. Humber*, 255 F.3d at 1308, 1311 (11th Cir. 2001); some law concerning "regularity and sophistication" of defendant under "*in the business*" enhancement for receiving stolen property but not applicable here, *US v. St. Cyr*, 977 F.2d 698 (1 Cir. 1992).

      Other Circuits have applied this Guidelines enhancement as a practical and fact-driven analysis and not rigid adherence to the application notes (nor would Mr. Andujar apply the application notes rigidly). None of he examples provided by these Second Circuit decisions upholding "sophisticated means" would support application of the upward adjustment in this case. One more-often cited case applying the term "sophisticated means", though in the area of tax crimes under USSG §2T1.1(b), is the Second Circuit's holding *Lewis*. *US v. Lewis*, 93 F.3d 1075 (2 Cir. 1996). Where a scheme involved more than 20 participants in elaborate scheme to create false deductions among a number of entities and different bank accounts, sophisticated means enhancement applied even though defendant neither devised nor created the criminal scheme in which he participated and from which he benefited. In making this

5

determination, the Lewis Court reasoned that "A defendant cannot escape punishment simply by contracting out to his accountants the dirty work of tax evasion." *Id* at 1084. This enhancement also appears in the area of mortgage fraud and offenses against financial institutions. It has been held applicable to a defendant who recommended strategies involving selection of certain loan documentation to reduce the likelihood that lenders would obtain from the Internal Revenue Service copies of the borrowers' tax returns and thereby discover the fraud. *US v. Amico*, 416 F.3d 163 (2 Cir. 2005)(under §2F1.1)(b). See, *US v. Jackson,* 346 F.3d 22 (2 Cir. 2003) (a defendant's use of hotels and courier services to take delivery of fraudulently obtained goods, use of prepaid phone cards to prevent tracking of his activities, manipulations of victims' credit lines and billing addresses over internet combining to indicate that the enhancement was merited).

Cases in the Seventh Circuit are similarly unavailing for the government because they all show a defendant higher degrees of organization and concerted effort and making persistent attempts at concealment. In a prosecution involving a tax preparer making false refunds, the Seventh Circuit upheld application of the enhancement to a defendant who used a corrupt IRS employee to gather data and assist in concealing scheme and obstructing justice. *US v. Friend,* No. 96-1616 (7 Cir. 1997). See, also, e.g., *US v. Schilling*, 142 F.3d 388 (7 Cir. 1998)(established a dummy or shell company to avoid diesel excise taxes).

## CONCLUSION

For the reasons set forth above, the Court should deny the government's request for a sophisticated means enhancement.

Dated this 17th day of August, 2006 at Boston, Massachusetts.

*Kevin L. Barron*
Kevin L. Barron 550712
Attorney for Defendant
JOSHUA T. ANDUJAR
25 CHANNEL CNTR ST 408
BOSTON MA 02210-3416
Tel. No. 617.737.1555
Mobile  617.407.6837
Fax No. 617.517.7711
kevin.barron@mac.com

CERTIFICATE

Counsel certifies he has, on August 17, 2005, served this motion upon AUSA John Capin, Esq., through the CM/ECF of this District and that no party requires service by mail or other means.

*Kevin L. Barron*
Kevin L. Barron