UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
UNITED STATES OF AMERICA          )
                                                    )
            v.                                      )        CRIMINAL NO.  05-10104-MLW
                                                    )
JOSHUA T. ANDUJAR,                    )
                                                    )
                        Defendant                )
                                                    )
_____)

## AFFIDAVIT OF THOMAS E. DEMEO, JR.

I, Thomas E. Demeo Jr., state the following based on my personal knowledge and upon review of the investigative file and other documents in the above-captioned matter:

1.      I have a Bachelor of Science degree in Accounting from Bentley College and have worked for the IRS as a Revenue Agent from June of 1991 to April of 2000.  As a Revenue Agent I conducted numerous tax audits and have become knowledgeable with the tax laws.

2.      I have been employed as a Special Agent of Internal revenue Service-Criminal Investigation (IRS-CI) since April 2000.  During my employment I have conducted and/or assisted in criminal investigations involving tax fraud, money laundering, violations of the bank Secrecy Act, and other related federal violations.

3.      In addition to conducting criminal investigations I have served as the Questionable Refund Program and Return Preparer Program (QRP/RPP) coordinator.  The QRP/RPP coordinator acts as a liaison between IRS Special Agents and the IRS Fraud Detection Center (FDC). One of the primary functions of the QRP/RPP coordinator is to review QRP/RPP scheme referrals prepared by the FDC, identify common characteristics and trends and determine

1

if the referral warrants further investigation.  The FDC analysts closely monitor return preparers and questionable refund schemes to prepare a scheme referral for criminal investigation.

4.    As a Special Agent, I have had extensive involvement with the Questionable Refund Program.  In this capacity I have conducted and assisted in numerous investigations of illegal schemes designed to obtain federal income tax refunds from the government.  These schemes are known as questionable refund schemes and typically involve violations of Title 18 United States Code, Sections 286 (Conspiracy to defraud the government with respect to Claims) and 287 (False, Fictitious, or Fraudulent Claims Against the United States).

5.    Based on my training and experience and discussions with other Special Agents, I have learned that questionable refund schemes typically involve the following:

A.    The perpetrator seeks willing participants known as filers or obtains names and Social Security numbers of unknowing persons for the purpose of filing income tax returns claiming refunds.  Typically, the refunds claimed are based on fictitious income, tax withholding, deductions, and/or credits.

B.    The perpetrator will often fabricate or have fabricated a Form W2 with the name and social security number of a filer or unknowing person, a company name, a valid Employer Identification number, and fictitious wage and withholding amounts.

C.    The perpetrator will often use a typewriter or a computer and printer to prepare the tax returns.

D.    The perpetrator often will have refunds mailed to an address, usually a

2

residence or post office box, over which the perpetrator has control or easy access.

E.    The perpetrator will often arrange to have the fraudulently obtained refund checks negotiated at various financial institutions and check cashing facilities using false identification.

F.    The perpetrator will keep a majority of the ill-gotten refund proceeds and pay a substantially smaller fee to the filer.

BASIS FOR AFFIDAVIT

6.    I base this affidavit on: (a) my personal knowledge and involvement in the investigation ; (b) consultation with and information provided to me by other Special Agents of IRS Criminal Investigation, including memoranda of interview of people in whose names Andujar filed tax returns; (c) consultation with and information provided by employees of the FBI, Boston, Massachusetts; (d) consultation with and information provided by employees of the Fraud detection Center located in Andover, Massachusetts; (f) review of the presentence reports in both the above-captioned case and in an earlier federal prosecution of Andujar, United States v. Andujar, Criminal No. 00-10036-NG; and (g) my professional training and experience as a criminal investigator.

7.    This affidavit is submitted for the purpose of establishing loss sustained by the government for sentencing purposes.  It does not contain all facts known to the IRS in regard to the individuals, entities and events described herein.

8.    During November of 2000, the Federal Bureau of Investigation (FBI) along with the Immigration and Customs Enforcement (ICE) (formerly Immigrations and naturalization

3

Service) informed the IRS that they were investigating an individual named Joshua Andujar (Andujar), 117 Laurel Street, Fitchburg, Massachusetts for allegedly selling false identifications to illegal aliens. During the course of their investigation, they found that Andujar was also preparing individual federal income tax returns. This information was passed on to the IRS-CI Fraud Detection Center (FDC) in Andover.

9.      An analyst at the FDC researched all tax return filed with the IRS using Andujar's residential address of 117 Laurel Street, Fitchburg, Massachusetts or his post office box, P.O. Box 1609 Fitchburg, Massachusetts. More than 50 tax returns were identified. Though it is not illegal to have tax returns directed to the preparers address or P.O. Box, the practice is uncommon and highly suspicious. Further review of the tax returns identified, revealed the signatures on the returns have similar characteristics. A review of documents known to have been prepared by or signed by Andujar, including his own personal tax returns, revealed that the writing on those documents shared distinctive characteristics with Andujar's handwriting.

## GENERAL SCHEME

10.     From approximately December 2001 through 2003, Andujar operated a tax return preparation business in the Fitchburg/Worcester area. Andujar's criminal conduct involved his preparing and filing of tax returns in the names of taxpayers and, unbeknownst to the taxpayers, listing on those returns false dependents, which he then used to generate earned income credits ("EIC") that resulted in inflated refunds.

11.     Andujar's modus operandi shared much in common with the conduct that led to his earlier prosecution in this Court, in Criminal No. 00-10036-NG. The following information is based on a review of the presentence report in this case and Andujar's earlier case, a review of

the investigative file in the earlier case and an interview of Andujar's former employee, Anne Torres:

      A.    According to Anne Torres, who was worked as Andujar's secretary in 2000, Andujar instructed Torres to send money to a woman in Puerto Rico to purchase birth certificates and social security numbers.  Andujar sold such birth certificates and social security cards to illegal aliens.   According to Torres, at Andujar's direction, she helped several illegal aliens obtain driver's licenses or Massachusetts identification cards by having the illegal aliens sign notarized rental lease agreements and copies of tax returns provided by Andujar for use as proof of residency and identity.  (Andujar retained the original tax return.)  Andujar instructed Torres to destroy the leases and copies of the tax returns once the illegal alien received a Massachusetts identification card or license.  It appears that Andujar then, unbeknownst to the illegal alien, filed one or more tax returns in the name he had sold to the illegal alien.

      B.    In the case for which Andujar is now awaiting sentencing, he used at least five of the identities he sold to illegal aliens as part of his earlier crimes.

- Documents provided by Torres during the earlier investigation include a social security card and birth Puerto Rican birth certificate in the name Elvin Omar Santos Gonzales.  Andujar used that name and social security number again November 2002 to file a fraudulent tax return in this case.

- Torres also provided a birth certificate and social security card in the name Elizabeth del Valle, another identity Andujar used to file a fraudulent return in this case, in September 2002.

- In both the earlier scheme and in this one, Andujar used the name Efrain Pantojas Ramos, which Andujar admitted he stole and fraudulently used on a false tax return.  In the earlier case, Andujar sold an undercover agent a birth certificate and social security card in the name Efrain Pantojas Ramos.  Andujar also provided the undercover agent a fictitious tax return and residential  lease filled

out in the same name.  Using these documents, Andujar helped the undercover agent obtain a Massachusetts identification card in the name Efrain Pantojas Ramos from the Registry of Motor Vehicles.

- When Andujar was arrested in connection with the earlier scheme, he had in his possession a manila envelope marked "Harry Rodriguez" with a tax return and a rental lease agreement inside of it.  These documents are similar to the documents Andujar used to help the undercover agent fraudulently obtain the Efrain Pantojas Ramos Massachusetts identification card.  One of the names Andujar used on fraudulent tax returns filed in this case was Harry Rodriguez-Hernandez.

- In November 1999, as part of the earlier scheme, Andujar sold a cooperating witness a birth certificate in the name of Maria Lourdes Garcia.  As  part of the scheme for which Andujar is now awaiting sentencing, he filed a fraudulent tax return in the name Maria de L. Garcia.  An illegal alien stated to IRS agents that she purchased that identity and did not file the tax return in question.

C.     Torres explained that Andujar completed fraudulent income tax returns in the names he sold to such illegal aliens.  Torres stated that Andujar included on all such fraudulent returns the names of  fictitious dependents.

D.     The transcript of a telephone conversation call from Andujar to Torres while Andujar was in custody at the Plymouth County House of Correction corroborates much of what Torres reported.  In that conversation, Andujar gave Torres instructions on, among other things, how to obtain the age and gender for the prospective birth certificate customer; how to contact his source in Puerto Rico; and how to falsify tax returns.

12.     Andujar had many of the refunds deposited into bank accounts he controlled and kept a portion of or, in some instances, the entire refund.   According to taxpayer interviews, Andujar did not show the returns to the clients and they were unaware of the false dependents listed and the amount of the refunds received.

6

13.    Tax returns filed by Andujar had several identifying features in common: (a) common, recurring addresses (either Andujar's home address or "fronts" where Andujar went to pick up refund checks); (b) recurring bank accounts into which refunds were deposited; (c) handwriting; and (d) in many instances the submission of returns to the IRS's Andover Service Center in envelopes that contained Andujar's business or home address.

14.    The following addresses were used on tax returns filed by Andujar:

A.    117 Laurel Street, Fitchburg, Massachusetts. This is Andujar's residential address and was the address listed on certain of certain returns that Andujar has admitted he filed and are fraudulent.

B.    P.O. Box 1609, Fitchburg, Massachusetts. Andujar listed this address on the three personal tax returns he filed in his own name in 2002 and this address is also listed on certain of the returns that Andujar has admitted he filed and are fraudulent.

C.    1249 Main Street, Fitchburg, Massachusetts. The resident at this address, Tomas Serrano, stated to IRS agents that Andujar instructed him to place several names on his mail box so that Andujar could have refund checks mailed to 1249 Main Street. Andujar has admitted that he filed certain tax returns listing this address and that those returns are fraudulent.

D.    24 West Beacon Street, Fitchburg, Massachusetts. Andujar has admitted that he filed certain tax returns listing this address and that those returns are fraudulent. In addition, two apparently fraudulent returns using this address were filed in the name of a person (Aida Rivera) who listed

7

Andujar's personal post office box (P.O. Box 12, Leominster, Massachusetts) on another apparently fraudulent return.

E.    8B Fairmount, South Lawrence, Massachusetts.  Andujar has admitted that he filed a tax return listing this address and that the return is fraudulent.

F.    82 South Broadway, South Lawrence, Massachusetts.  Two returns filed as part of this scheme listed this address.  One return was filed in the name of Maria De L. Garcia.  The refund for that return was deposited into a bank account belonging to Andujar's wife.  (Another return filed in the name of Maria De L. Garcia listed Andujar's post office box as the taxpayer's address; yet another listed an address of a person who has informed the IRS that she resides in Puerto Rico and never resided in Massachusetts.)  Another person has stated to IRS agents that (1) she purchased Maria De L. Garcia's identity from an unknown man; (2) the man told her not to worry about taxes; (3) she did not file or recognize the returns in question; and (4) she has never lived at 82 South Broadway.

G.    113 East Haverhill Street, Lawrence, Massachusetts.  This address appears on two tax returns filed several days apart and typed on what appears to be the same typewriter Andujar used to type his own personal tax returns.  The address also appears on a tax return filed in the name Aida Rivera.  An earlier Aida Rivera tax return listed  Andujar's personal post office box as the taxpayer's mailing address.

H.    P.O. Box 12, Leominster, Massachusetts.  Andujar listed this address on his own personal tax return he filed in 1997.  It is also listed on a tax return bearing what appears to be Andujar's handwriting and filed while Andujar was in federal custody in connection with an earlier prosecution.

I.    50 Danbury Drive, Methuen, Massachusetts. This address appears on two tax returns that are part of this scheme.  One was written in what appears to be Andujar's handwriting and mailed to the IRS in Andujar's business envelope.  The other appears to have been typed on what appears to be the same typewriter Andujar used to type his own personal tax returns.

J.    61 Mistic Street, Methuen, Massachusetts.  This address appears on a tax return filed in the name Rosario Pizarro-Rosa.  Two returns in that name listed Andujar's personal post office box as the taxpayer's address.

K.    186 Spruce Street, Lawrence, Massachusetts.  This address appears on a single tax return, which was filed in the name Jose Serrano.  The return appears to have been typed on what appears to be the same typewriter Andujar used to type his own personal tax returns.  The return requested that the refund be directly deposited into a bank account belonging to Andujar's wife.

L.    135 Charles Street, Apt. 3, Fitchburg, Massachusetts.  This address appears on a single tax return, which was filed in the name Ivonne Llanos. That return is written in what appears to be Andujar's handwriting and was filed in July 2001, while Andujar was in federal custody.  During a

search of Andujar's business, handwritten notes listed 135 Charles Street as an address to which tax returns would be directed.

M.    130 South Street, Lynn, Massachusetts.  This address appears on a single tax return, which was filed in the name Eric Nieves.  The return is written in what appears to be Andujar's handwriting and was filed in July 2001, while Andujar was in federal custody. (The IRS withheld payment on that return and an nearly identical return was filed in May 2002.  With regard the May 2002 refund, the IRS failed to detect fraud and paid the refund.)

N.    121 Laurel Street, Fitchburg, Massachusetts.  This address is next door to Andujar's home.  It appears on a single tax return, which was filed in the name Eric Nieves.  That return is written in what appears to be Andujar's handwriting and was filed in July 2001, while Andujar was in federal custody.

15.    Andujar caused the first five returns in this scheme to be filed in July 2001, while he was in custody in connection with in Criminal No. 00-10036-NG.  It is clear that Andujar prepared these returns because they are all prepared in Andujar's handwriting and all list an address connected to Andujar.  Although Andujar had given instructions to Torres while he was in custody in 2000, Torres did not assist Andujar in filing returns in July 2001. (By late 2000, Torres had, on her own initiative, reported Andujar's activities to the police and had been interviewed by the FBI and INS.)

16.    During the course of the IRS investigation into fraudulent returns filed by Andujar, the IRS Fraud Detection Center froze payment of refunds in connection with returns

that appeared to be filed by Andujar and to be fraudulent. In what appears to be an effort to avoid detection, Andujar, at the beginning of 2003, started to file tax returns electronically. Those returns are harder to detect because they do not bear Andujar's handwriting or return address on an envelope. Andujar did not file those electronic returns using the IRS system available to tax preparers. Instead, he filed the returns as if they had been self-prepared by the taxpayer. This, too, made the fraud more difficult to detect.

17. For the purposes of this affidavit, I have identified 64 tax returns that can be divided into three groups, each of which is summarized on a spreadsheet attached as an exhibit hereto. The groups are as follows:

> Group 1:    This group consists of thirteen tax returns that Andujar, in pleading guilty, has admitted are fraudulent. The IRS has interviewed each of the persons named on these tax returns, with the exception of one such person, who was dead at the time of filing. The names of the taxpayers on the returns were either individuals who sought Andujar's services as a tax preparer or individuals whose identities Andujar stole for the purposes of filing fraudulent returns.
>
> (See PSR ¶¶15-18; a spreadsheet captioned "Group 1" and detailing the loss for this group is attached hereto as Exhibit 1.)
>
> Group 2:    This group consists of eight tax returns in the names of four individuals – Elizabeth DelValle, Luis Escalera-Verdejo, Maria de L. Garcia, and Jaclyn Roldan – specified in the indictment in counts to which Andujar did not plead guilty. The IRS has interviewed the four persons named on these returns as well, each of whom has admitted to being an illegal alien. Each has admitted that the name appearing on the tax return is not his or her true name; rather, he or she purchased a birth certificate, drivers licenses, or other form of identification in that name. Three of the four individuals purchased the identity documents directly from Andujar. The fourth – who purchased the identity of Maria De L. Garcia – purchased identity documents from an unknown person. The tax returns falsely filed in Garcia's name, however, specified as Garcia's address a post office box rented by Andujar or Andujar's residential address (117 Laurel Street in Fitchburg). Thus, Andujar is linked to each of these returns.

(See PSR ¶¶19-23; a spreadsheet captioned "Group 2" and detailing the loss for this group is attached hereto as Exhibit 2.)

Group 3:     This group consists of 43 tax returns not specified in the indictment but demonstrably false and linked to Andujar in ways that make clear that he filed them or caused them to be filed.   They are linked to Andujar in several ways, e.g. they are written in what appears to be Andujar's handwriting; they identify as the taxpayer's address an address associated with Andujar (home address, post office box, or addresses he has used in connection with returns included in Groups 1 and 2), or they are deposited into a bank account under Andujar's control.  The returns are demonstrably false because they were filed in the names of individuals who were residing in Puerto Rico during the tax years in question and who therefore had no obligation to file a tax return for income earned in Massachusetts.  Moreover, according to IRS records, no tax return has ever been filed in the name of any of these individuals in, except for the returns included in this group.

(See PSR ¶¶24-27; a spreadsheet captioned "Group 3" and detailing the loss for this group is attached hereto as Exhibit 3.)

The amount of the total actual loss corresponding to these three groups (i.e. false claims paid by the IRS) is $125,916; the amount of the total intended loss (i.e. false claims submitted to the IRS) is $166,747.  PSR ¶28.  A summary of the loss amount for the three groups is attached as Exhibit 4.

18.    With regard to Group 2, each of the individuals in whose (false) names the returns in this group were filed, has (a) admitted to being an illegal alien and (b) admitted that the name appearing on the tax return is an identity he or she purchased from either Andujar or from an unknown person.  Moreover, each of these individuals has stated that he or she did not authorize Andujar to file a tax return.  Finally, each of these tax returns listed as the taxpayer's address a location Andujar used as part of this scheme.  Specifically, the returns list the following addresses: 117 Laurel Street (Andujar's residential address); 24 West Beacon Street

(the address listed on the Jose Reyes-Ramos 1999 return, which return Andujar has admitted

was fraudulent); or P.O Box 1609 (rented by Andujar.)   The evidence thus shows that Andujar

filed or caused to be filed each of these eight returns without the knowledge of the individuals

who purchased the identities of the persons in whose names the returns were filed.  The loss

caused by each of these returns is discussed below.

## SUMMARY OF GROUP 1

19.     The indictment charged Andujar with the filing of 21 false claims for refund.

ANDUJAR accepted responsibility for 13 of the 21 counts. Those 13 counts are summarized in

the Group 1 Spreadsheet attached hereto.  The 13 false claims involved six taxpayers.  Four of

the six taxpayers, Ramon Batista, William Cotto, Danixa Rivera-Merced and Joel Serrano have

stated that they believed Andujar to be a bona fide tax professional and retained him to prepare

returns for them.  All deny knowing any of the dependents listed on their respective returns.

They further stated that the signatures on the returns are forgeries and that Andujar never

provided them with copies of the returns (or ever showed the returns to them).  All deny living

at the addresses listed on their returns or owning the bank accounts into which the refunds had

been deposited.  Each received only a portion or none of the refund issued by the IRS for the

returns filed.

20.     To determine the loss amount corresponding to the Group 1 tax returns, the

amount of money the taxpayers named on those returns would be entitled to absent the false

claims must be subtracted from the total.  As detailed in the Group 1 spreadsheet (*see* column

captioned "Adjusted refund per [Revenue Agent Report] 4549"), the total refund amount must

be reduced by $16,054.00.[1]  This yields a total loss of $26,101.00, of which $17,639.29 is

actual loss ("Total False Claims Paid") and the remainder is attempted loss.  (Attempted loss in

this case describes those claims for refund that were disallowed by the IRS To calculate the

actual tax refund allowed for Andujar's taxpayers who worked, revenue Agent Paul White

prepared a Revenue Agent Report, known as an RAR Form 4549.

21.    The following is a summary of key information concerning each of the Group 1

taxpayers:

**Ramon Batista**:
Tax return filed for year 2001.  Batista stated that he met Andujar through a friend and
Andujar agreed to prepare a 2001 tax return for him.  Batista went to Andujar once for
the preparation of one return.  Batista stated that, contrary to what the return filed by
Andujar states, he did not have six dependents and the signature on the return was not
his.  Batista did not receive a refund check from the government regarding the 2001 tax
return.  Batista did receive a personal check from Luz Edith Perez Puerta (Andujar's
wife) in the amount of $2,716.00 via mail in lieu of his $5,432.00 refund claimed on the
2001 tax return.

**William Cotto:**
Tax return filed for year 1999.  Cotto stated that, he went to Andujar to have his 1999
tax return prepared.  Cotto further stated that he never received his 1999 return or a
copy of that return.  When  shown a copy of the 1999 Federal tax return filed in his
name, Cotto stated that he did not recognize the address, the dependents, or the
signature listed on the return.

**D. Rivera-Merced**:
Tax return filed for year 1999 and two returns filed for year 2000.  Danixa Rivera-
Merced stated to IRS agents that a friend recommended Andujar as a tax preparer.
Rivera-Merced sought to have Andujar prepare only her 2001 tax return.  Rivera-
Merced stated that in total she only received $1,100 in two personal checks from
Andujar.  After reviewing the three returns Andujar filed in her name (two for the year
2000; one for 2001), Rivera-Merced stated that she never saw the returns and that the
signature on the returns was not hers.  She further stated that she is single and has no

---

[1]No such reduction is required for tax returns filed in names Pantojas-Ramos or Reyes-
Ramos because Andujar did not file those returns on behalf of true taxpayers.  Therefore, the IRS
could not have owed refunds in connection with these returns.

children.  The two dependents listed on the returns filed in her name are not hers.

**Joel Serrano:**
Tax returns filed for years 2000 and 2001.  According to Joel Serrano, he met Andujar through his father and Andujar prepared a 2001 tax return for Serrano.  Serrano received a 2001 refund check in the amount of $5,517.00.  Serrano admitted signing the check and having Andujar cash the check and give him back the full amount to purchase a car.  Serrano did not receive a refund check for 2000 or any money from the $2,248 tax refund.  Serrano was unaware that a 2000 tax return was filed in his name.  Serrano did not sign the 2000 or 2001 Federal tax returns filed in his name.   Serrano did not live at 117 Laurel Street, Fitchburg, Massachusetts but recognized the address to be that of Andujar.

**E. Pantojas-Ramos:**
Tax returns filed for years 2000, 2001, and 2002.  Andujar filed returns for 2000, 2001, and 2002 in the name of Efrain Pantojas-Ramos.  Pantojas-Ramos is a Puerto Rican resident who has told IRS agents that he never resided in Massachusetts, does not know Andujar, and had no knowledge that his identity had been stolen, much less that it was being used to file federal tax returns with the Andover Service Center.

**Jose Reyes-Ramos:**
Tax returns filed for years 1999, 2000, and 2001.  Jose Reyes-Ramos, in whose name Andujar filed returns for 1999, 2000, and 2001, died in Manati, Puerto Rico on September 7, 1995.

## SUMMARY OF GROUP 2

22.    Each of the four persons named in group 2 has told IRS agents that he or she is an illegal alien who  purchased a birth certificate, drivers licenses, or other form of identification in that name.  Three of the four individuals purchased the identity documents directly from Andujar.  The fourth – who purchased the identity of Maria De L. Garcia – purchased identity documents from an unknown person.  The tax returns falsely filed in Garcia's name, however, specified as Garcia's address a post office box rented by Andujar or Andujar's residential address (117 Laurel Street in Fitchburg).  According to individuals in this category, they did not know that Andujar was filing returns in their (assumed) names.  Nor did they know any of the dependents listed on the returns.  Nor did they live at the addresses

specified on the returns, recognized the signatures on the returns, or ever receive any portion of the claimed refunds.

23.    The following is a summary of key information provided by each of the Group 2 taxpayers:

**Elizabeth Del Valle aka Silva de Leon**:
Tax return for year 2001. This person admitted she purchased the identity Elizabeth Del Valle for $1,000 from a man subsequently identified as Andujar. Her real name is Silvia Brenda De Leon. De Leon is an illegal alien from Uruguay. Andujar instructed her to destroy the documents he gave her after she obtained a Massachusetts driver's license. He also instructed her never to file a tax return. De Leon further stated that she did not ask Andujar to prepare a tax return. With respect to the 2001 U.S. Individual Income tax return filed in the name of Elizabeth Del Valle, De Leon recognized the name Elizabeth Del Valle as the name she purchased from Andujar but did not recognize the signature on the tax return and did not receive the refund of $4,043.

**Luis Escalera Verdejo aka Rodolfo de Leon**
Tax returns filed for years 2000 and 2001. This person admitted his real name is Rodolfo de Leon and that he is an illegal alien from Uruguay. De Leon stated he received a false identification from Andujar in exchange for allowing mail to be delivered to his house at 119 Laurel Street, Fitchburg, Massachusetts. According to De Leon, he asked Andujar to prepare a 2002 tax return. With respect to the 2000 and 2001 U.S. Individual Income tax return filed in the name of Luis Escalera Verdejo, De Leon recognized the name Luis Escalera Verdejo as the identity he acquired from Andujar, but did not know 2000 and 2001 tax returns were filed under that name. De Leon further stated he did not receive any refund in connection with the 2000 or 2001 returns.

**Maria De L. Garcia aka Patricia Cedeno**
Tax returns filed for years 2000, 2001, and 2002. This person's true name Patricia Cedeno. Cedeno told IRS agents that she purchased a birth certificate and social security card in the name Maria de L. Garcia for $2,400 from an unknown man. The seller told Cedeno not to worry about taxes. Cedeno was shown the 2000 and 2001 U.S. Individual Income Tax returns filed in the name of Maria Garcia with tax refunds of $2,277 and $2,408 respectively. Cedeno stated she never saw the returns before and the signature is not hers. Cedeno did not recognize the address on the return or the dependents listed. Cedeno had stated she did not receive any money from these tax return refunds. In 2003, after Cedeno was interviewed, the IRS received a 2002 U.S. Individual Income Tax Return filed in the name of Maria Garcia with a home address of 82 S. Broadway St., Apt. 44, S. Lawrence, Massachusetts. This same address

appeared on several other electronically filed tax 2002 returns in the names of tax payers for whom earlier returns listed Andujar's residential address or post office box. That tax return claimed a refund of $4,033.00 and was deposited into Bank North acct number 2424580003 held in the name of Andujar's wife, Luz Perez.   In January 2003, the true Maria De L. Garcia responded to an IRS questionnaire stating that she has never lived in nor has family in Massachusetts.

**Jaclyn Roldan aka Lena Gonzalez-Corria**

Tax returns for the years 2000 and 2001.  This person's true name is Lena Marcella Gonzalez-Corria.  Gonzalez-Corria stated she purchased a birth certificate and social security card in Roldan's name for $800.00 .  Gonzalez-Corria bought the false documents through a friend who told her she obtained them from Joshua Andujar. Gonzalez-Corria reviewed the 2000 U.S. Individual Income tax return filed in the name of Jaclyn Roldan and stated that she had never seen the return and had never received a refund in connection with the return.  She stated she has never lived at 117 Laurel St., and does not recognize the names of the two dependents listed on that return.  A 2000 federal income tax refund in the name of Jaclyn Roldan for $2,276.00 was deposited into Andujar's bank account number 1107185170 at Citizens Bank.  A 2001 tax return in Roldan's name was also filed, listing the same address and same two dependents. The IRS paid a refund in connection with that return.  Specifically, the IRS direct deposited a refund  in the amount of $5,708.20 into Andujar's bank account at Citizens Bank account number 1107185170.  The full amount of the claim, $5,429.00, was increased by a credit of $279.20 applied by the Service Center.

## SUMMARY OF GROUP 3

24.     As stated above, Group 3consists of 43 tax returns that are demonstrably false and linked to Andujar in ways that make clear that he filed them or caused them to be filed. As the Group 3 spreadsheet shows, these returns  are linked to Andujar in one or more ways, e.g. they are written in what appears to be Andujar's handwriting or using what appears to be the same typewriter Andujar used for his own personal tax returns; they identify as the taxpayer's address an address associated with Andujar (home address, post office box, or addresses he has used in connection with returns included in Groups 1 and 2); they direct the refunds to be deposited into a bank account under the control of Andujar or his wife; and fifteen of the returns in this group were filed in envelopes bearing Andujar's return address.

25. The returns are more likely than not false because they were all filed in the names of individuals who, according to records reviewed by IRS agents, were residing in Puerto Rico during the tax years in question and who therefore had not obligation to file a tax return for income earned in Massachusetts. Moreover, each of the social security numbers listed on the Group 3 returns was issued in Puerto Rico. According to IRS records, no tax return has ever been filed in the name of any of these individuals, except for the returns included in this group

26. In addition, as shown on the Group 3 spreadsheet, nearly all of the returns in this group included a Schedule C, which is a form on which a taxpayer sets forth income derived from a sole proprietorship. This is highly unusual given that most taxpayers do not own a business and therefore do not file a Schedule C. The reporting of income on a Schedule C will, in some instances, entitle the taxpayer to an earned income credit ("EIC"). An EIC will reduce the amount of tax owed in the amount of the EIC. All of the Group 3 returns that include a Schedule C have two things in common: (a) they claim two minor dependents and (b) the Schedules C report income in an amount between $10,000 to $12,000. This is significant for two reasons. First, the fact that the number of dependents and income range is perfectly consistent among the numerous returns suggests that Andujar fabricated the information. Put differently, it is extremely unlikely that nearly all of Andujar's clients would have (a) a schedule C business; (b) two dependents; and (c) income within this narrow range. Second, during the years at issue here – 1999 to 2001 – to maximize the EIC, a taxpayer would have to report that he had (a) at least two dependents and (b) Schedule C income in an amount between approximately $9,500 and $13,000. Reporting fewer than two dependents or reporting

18

Schedule C income of less than $9,500 or greater than $13,000 would have the effect of reducing the EIC (and therefore reducing the refund paid by the IRS).

27.     In an attempt to corroborate that the individuals in Group 3 were living in Puerto Rico during the relevant tax years, the IRS sent questionnaires to 17 of the 43 individuals in Group 3.   (The IRS also sent questionnaires to certain individuals in Group 1 and all four individuals in Group 2.)  Of the 17 people in Group 3 sent questionnaires, only three responded – Joel Albert-Mendez, Harry Rodriguez-Hernandez, Jose Luis Cruz-Santiago – each stating he or she had never lived in Massachusetts.

Signed under the pains and penalties of perjury this 21st day of August, 2006.

_____

THOMAS E. DEMEO, JR.
Special Agent
Internal Revenue Service

19

U.S. v. Joshua Andujar
Crim. No. 05-10104-MLW

Exhibit 1

**Group 1**



*Summary of Loss and Attempted Loss*
*Joshua Andujar*
*USC Docket Number 05CR10104*

| | Taxpayer | Year | Address per Return | Amount of Refund Claimed | Adjusted Refund per (RAR 4549) | Total False Claims | Amount Sent | Total False Claims Paid |
|---|---|---|---|---|---|---|---|---|
| 1 | Batista, Ramon | 2001 | 8B Fairmount Street, S. Lawrence, MA 01843 | $ 5,432.00 | $ 4,324.00 | $ 1,108.00 | $ 5,432.00 | $ 1,108.00 |
| | | | | | | $ - | | |
| 2 | Cotto, William | 1999 | 117 Laurel St., Fitchburg, MA 01420 | $ 3,303.00 | $ 1,150.00 | $ 2,153.00 | $ 3,303.00 | $ 2,153.00 |
| | | | | | | $ - | | |
| 3 | Pantojas-Ramos, Efrain | 2002 | 1249 Main Street, Fitchburg, MA 01420 | $ 2,536.00 | $ - | $ 2,536.00 | $ 2,536.00 | $ 2,536.00 |
| | Pantojas-Ramos, Efrain | 2001 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,381.00 | $ - | $ 2,381.00 | $ 2,381.00 | $ 2,381.00 |
| | Pantojas-Ramos, Efrain | 2000 | 1249 Main Street, Fitchburg, MA 01420 | $ 2,372.00 | $ - | $ 2,372.00 | $ 2,372.00 | $ 2,372.00 |
| | | | | | | $ - | | |
| 4 | Reyes-Ramos, Jose M. | 2001 | P.O. Box 1609, Fitchburg, MA 01420 | $ 4,008.00 | $ - | $ 4,008.00 | disallowed | |
| | Reyes-Ramos, Jose M. | 2000 | P.O. Box 1609, Fitchburg, MA 01420 | $ 2,246.00 | $ - | $ 2,246.00 | $ 2,246.00 | $ 2,246.00 |
| | Reyes-Ramos, Jose M. | 1999 | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,244.00 | $ - | $ 2,244.00 | disallowed | |
| | | | | | | $ - | | |
| 5 | Rivera-Merced, Danixa | 2001 | P.O. Box 1609, Fitchburg, MA 01420 | $ 5,316.00 | $ 4,843.00 | $ 473.00 | $ 5,316.00 | $ 473.00 |
| | Rivera-Merced, Danixa | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,246.00 | $ - | $ 2,246.00 | dup return | |
| | Rivera-Merced, Danixa | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,306.00 | $ 435.00 | $ 1,871.00 | $ 2,342.29 | $ 1,907.29 |
| 6 | Serrano, Joel | 2001 | 1249 Main Street, Fitchburg, MA 01420 | $ 5,517.00 | $ 5,183.00 | $ 334.00 | $ 5,517.00 | $ 334.00 |
| | Serrano, Joel | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,248.00 | $ 119.00 | $ 2,129.00 | $ 2,248.00 | $ 2,129.00 |
| | **GROUP 1** | | | **$42,155.00** | **$ 16,054.00** | **$ 26,101.00** | **$ 33,693.29** | **$ 17,639.29** |

U.S. v. Joshua Andujar
Crim. No. 05-10104-MLW

Exhibit 2

**Group 2**

*Summary of Loss and Attempted Loss*
*Joshua Andujar*
*USC Docket Number 05CR10104*

| Taxpayer | Year | Address per Return | Amount of Refund Claimed | Adjusted Refund per (RAR 4549) | Total False Claims | Amount Sent | Total False Claim Paid |
|---|---|---|---|---|---|---|---|
| 7 DelValle, Elizabeth | 2001 | 117 Laurel Street, Fitchburg, MA 01420 | $ 4,043.00 | | $ 4,043.00 | disallowed | |
| 8 Escalera-Verdejo, Luis | 2001 | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,422.00 | | $ 2,422.00 | $ 2,422.00 | $ 2,422.00 |
| Escalera-Verdejo, Luis | 2000 | 24 West Beacon St., S. Lawrence, MA 01843 | $ 2,266.00 | | $ 2,266.00 | $ 2,295.55 | $ 2,295.55 |
| 9 Garcia, Maria De L. | 2002 | 82 S. Broadway St., S. Lawrence, MA 01843 | $ 4,033.00 | | $ 4,033.00 | $ 4,033.00 | $ 4,033.00 |
| Garcia, Maria De L. | 2001 | P.O. Box 1609, Fitchburg, MA 01420 | $ 2,408.00 | | $ 2,408.00 | $ 2,408.00 | $ 2,408.00 |
| Garcia, Maria De L. | 2000 | 121 Laurel St., Fitchburg, MA 01420 | $ 2,277.00 | | $ 2,277.00 | $ 2,277.00 | $ 2,277.00 |
| 10 Roldan, Jaclyn | 2001 | 117 Laurel Street, Fitchburg, MA 01420 | $ 5,429.00 | | $ 5,429.00 | $ 5,708.20 | $ 5,708.20 |
| Roldan, Jaclyn | 2000 | 117 Laurel Street, Fitchburg, MA 01420 | $ 2,276.00 | | $ 2,276.00 | $ 2,276.00 | $ 2,276.00 |
| **GROUP 2** | | | $25,154.00 | $ - | $ 25,154.00 | $ 21,419.75 | $ 21,419.75 |

<u>U.S. v. Joshua Andujar</u>
Crim. No. 05-10104-MLW

# Exhibit 3



Summary of Loss and Attempted Loss
Joshua Andujar
USC Docket Number 05CR10104



Summary of Loss and Attempted Loss
Joshua Andujar
Number 05CR10104

The signatures on most of the above filed returns appear to be signed by the same person and similar to that of Joshua Andujar

\* CK indicates that at check was deposited or cashed against one of the wifes accounts &

  DD indicates the return requested the refund to be direct deposited into the wifes account and/or was deposited into that account

\*\* Cashed by  Andujar

<u>U.S. v. Joshua Andujar</u>
Crim. No. 05-10104-MLW

Exhibit 4

**Summary**



*Summary of Loss and Attempted **Loss***
*Joshua Andujar*
*USC Docket Number 05CR10104*

| Group | Amount of Refund Claimed | Adjusted Refund per (RAR 4549) | Total False Claims | Amount Sent | Total False Claims Paid |
|---|---|---|---|---|---|
| GROUP 1 | $ 42,155.00 | $ 16,054.00 | $ 26,101.00 | $ 33,693.29 | $ 17,639.29 |
| GROUP 2 | $ 25,154.00 | $ - | $ 25,154.00 | $ 21,419.75 | $ 21,419.75 |
| GROUP 3 | $ 115,492.00 | | $ 115,492.00 | $ 86,856.66 | $ 86,856.66 |
| TOTAL | $ 182,801.00 | $ 16,054.00 | $ 166,747.00 | $ 141,969.70 | $ 125,915.70 |